## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61630-CIV-DIMITROULEAS/ROSENBAUM

JAMESON COOPER,

       Plaintiff,

vs.

MERIDIAN YACHTS, LTD.,
et al.,

       Defendants,

vs.

DE VRIES SCHEEPSBOUW B.V.
d/b/a FEADSHIP, et al.,

       Third-party Defendants.

_____/

## ORDER

      This matter is before the Court on Third-Party Defendants' Motion to Compel Third-Party Plaintiffs to Produce a Privilege Log and Documents in Response to Third-Party Defendants' First Requests for Production. [D.E. 310]  The Court has reviewed the Motion, Third-Party Plaintiffs' Response in Opposition [D.E. 319], the Reply [D.E. 334], and has heard argument from the parties at a hearing conducted on May 12, 2008.  The Court announced many of its rulings during the hearing, but reserved ruling on two of the issues presented in the Motion to Compel.  This Order memorializes the rulings announced by the Court during the hearing and further sets forth its determination with respect to those items taken under advisement.

## *DISCUSSION*

This matter arose out of Plaintiff Jameson Cooper's claim for damages resulting from personal injuries sustained while he was employed by the *M/Y Meduse* as its captain. Plaintiff specifically claimed that he suffered injuries when a food lift allegedly malfunctioned and fell, crushing his left lower leg. Third-Party Plaintiffs settled the claim brought by Plaintiff and now seek indemnification, contribution, and equitable subrogation from Third-Party Defendants.

The Motion to Compel at issue relates to Third-Party Defendants' First Request for Production served on Third-Party Plaintiffs. Third-Party Plaintiffs served their responses to the First Request for Production, asserting objections on the grounds of privilege with respect to a number of the requests for production. However, according to Third-Party Defendants, Third-Party Plaintiffs failed to produce a privilege log identifying any such privileged documents. Therefore, Third-Party Defendants seek for the Court to compel the production of a privilege log with Third-Party Plaintiffs identifying all documents withheld from production. The Motion to Compel also seeks to require Third-Party Plaintiffs to produce additional documents requested in the First Request for Production.

Since the filing of the Motion to Compel, Third-Party Plaintiffs have produced a privilege log to Third-Party Defendants. However, with respect to the documents sought pursuant to the Motion to Compel, Third-Party Plaintiffs contend that their objections meet the specificity requirements of Local Rule 26.1 and further contend that they are not required to supplement their document production. Accordingly, Third-Party Defendants claim that the Court should deny the Motion to Compel the production of additional documents.

The Motion, as narrowed, relates to Requests 17, 18, 21, 28, 30, 31, 32 and 36. As noted above, the Court heard argument from counsel at a hearing conducted on May 12, 2008, and the Court ruled from the bench on most of the issues presented. Set forth below is the Court's

2

determination with respect to the documents sought by Third-Party Defendants in their Motion to Compel.

**Request 17**:

Request for Production 17 seeks any and all documents which relate to the April, 1997, incident (and any other incidents) involving the subject food lift. Third-Party Plaintiffs objected to the requests as being overly broad, vague, ambiguous, and not limited to a relevant time period. More specifically, Third-Party Plaintiffs objected that the request failed to specify what was meant by the term "April 1997 incident" and that the request uses the phrase "any and all documents." Further, Third-Party Plaintiffs contend that to the extent that the request seeks documents regarding Captain Cooper's accident on the *Meduse*, responsive documents would include information that constitutes attorney-client communications or work product.

Subsequent to the filing of the Motion to Compel, Third-Party Plaintiffs, despite their objections, have stated that they took further steps to verify that all documents or information related to the food lift had been produced. Third-Party Plaintiffs then supplemented their response to Request 17. Contemporaneously with filing their Response to the Motion to Compel, Third-Party Plaintiffs also provided opposing counsel with their Privilege Log. Since Third-Party Plaintiffs supplemented their response to Request 17, during the hearing on this matter, the Court inquired as to whether Third-Party Defendants still wished to proceed on their Motion. Third-Party Defendants responded that although they had received the supplemental response from Third-Party Plaintiffs, Third-Party Defendants sought for opposing counsel to provide Bates numbers that corresponded to the responsive documents produced so that Third-Party Defendants could verify that they had received everything responsive to the request.

Counsel for Third-Party Plaintiffs stated that his understanding was that all responsive

3

documents had been produced. Specifically, Third-Party Plaintiffs verified that they had produced all documents relating to maintenance of the food lift. When asked by the Court whether Third-Party Plaintiffs had corresponding Bates numbers for the responsive documents, counsel stated that he had no objection to providing the information to opposing counsel. Thus, the Court directed Third-Party Plaintiffs to provide Bates numbers for the responsive documents within five days of the hearing. (*i.e.*, by May 19, 2008). At a subsequent hearing held on May 19, 2008, counsel for Third-Party Plaintiffs sought a two-day extension to provide the relevant Bates numbers. The Court granted the request and provided Third-Party Plaintiffs until May 21, 2008, to provide the information (except as it relates to documents concerning the Freeman Report, which is addressed below).

**Request 18**:

Request for Production 18 seeks any and all documents which relate to the appraisal, re-appraisal, certification, or re-certification of the subject food lift and slack cable device installed aboard the *Meduse* from the date of its launch to the present. Third-Party Plaintiffs objected, stating that the request was overly broad, vague and ambiguous as to what was meant by the terms "appraisal," "re-appraisal," "certification," or "re-certification." Notwithstanding their objections, Third-Party Plaintiffs identified the Schindler Report dated July 18, 2007, as responsive to the request. In their Motion to Compel, Third-Party Defendants claim that because the Schindler Report was identified in their response, Third-Party Plaintiff must also produce other documents relating to the Report, such as correspondence. Third-Party Plaintiffs disagree with Third-Party Defendants' reasoning, but verify that all known correspondence related to the various inspections conducted by any Schindler entity on the food lift has been produced.

During the May 12, 2008, hearing, counsel for Third-Party Defendants asserted that Third-Party Plaintiffs' argument that the use of the term "certification" as being vague is without merit

4

since the Schindler Report specifically refers to "certifications."   According to Third-Party Defendants, "certification" is a term of art that should be known to Third-Party Plaintiffs, especially since it was included in the Schindler Report.  After hearing argument from counsel, the Court agreed that the term "certification" as used in the request was being used as a term of art.  Thus, if Third-Party Plaintiffs are familiar with the term, they must produce responsive documents. Ultimately, the Court directed counsel for Third-Party Plaintiffs to provide his clients with the wording of Request 18 to determine whether they are familiar with the term and whether any additional documents are responsive.  Third-Party Plaintiffs were required to produce any additional responsive documents, if they exist, within ten days of the hearing (*i.e.*, May 27, 2008).  If no additional responsive documents exist, Third-Party Plaintiffs were directed to certify to Third-Party Defendants that all responsive documents had already been produced.

**<u>Request 21</u>**:

Request for Production 21 seeks any and all documents relating to surveys or incident reports regarding the *Meduse* performed at any time by any third party, including Patton Marine, John Freeman, Freeman and Associates and Freeman & Partners.  With respect to this production request, Third-Party Defendants urge the Court to compel Third-Party Plaintiffs to produce communications between Freeman & Partners, on the one hand, and counsel for Third-Party Plaintiffs (and their agents), on the other, which are listed on Third-Party Plaintiffs' Privilege Log at Entries 91 through 95 and 97 through 99.

According to Third-Party Plaintiffs, Freeman & Partners serves as a consulting expert, and the work-product doctrine protects Third-Party Plaintiffs' counsel's communications with Freeman & Partners from disclosure.   In response, Third-Party Defendants argue that even if the communications with Freeman & Partners may once have enjoyed the protection of the work-product

5

doctrine, Third-Party Plaintiffs waived that protection when they produced the Freeman & Partners Incident Report ("Freeman Report") earlier in this litigation.  Alternatively and additionally, Third-Party Defendants note that in the process of conducting the work reflected in the Freeman Report, Freeman & Partners disassembled the food lift involved in the incident at issue in the underlying case, and Third-Party Defendants never had the opportunity to examine the food lift at issue prior to its disassembly.  Third-Party Defendants therefore urge the Court to find any privileges or otherwise applicable protections abrogated in this case.  In support of this argument, Third-Party Defendants assert that they have a substantial need for the materials to prepare their case and that they cannot obtain the substantial equivalent by other means.

The parties' positions implicate two separate aspects of Rule 26, Fed. R. Civ. P.  Rule 26(b)(3), Fed. R. Civ. P., applies generally to all discovery and codifies the work-product doctrine originally recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).  *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1421 (11th Cir. 1994); *see also* Advisory Committee Notes to 1970 Adoption of Rule 26(b)(3), Fed. R. Civ. P. (discussing the Rule's adoption of the *Hickman* work-product doctrine principles).  That rule provides, in relevant part,

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party

concerning the litigation. . . .

Third-Party Plaintiffs' arguments against release of the documents at issue also make Rule 26(b)(4), Fed. R. Civ. P., relevant to the Court's consideration of Third-Party Defendants' Motion to Compel in that Third-Party Plaintiffs contend that they hired Freeman & Partners in anticipation of litigation or in preparation for trial, and they do not expect to call the firm as a witness at trial. Rule 26(b)(4) governs discovery as it relates to experts. More specifically, Rule 26(b)(4)(B) states,

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

The Court first considers what, if any, relationship Rule 26(b)(4)(B) has to Rule 26(b)(3). Rule 26(b)(3) explicitly extends the work-product doctrine to materials created in anticipation of litigation or in preparation for trial not only by a party's attorney, but also by a party's "consultant" or other "agent." Surely, a consulting expert who will not testify, but instead is hired by a party or his attorney to assist with that party's claim or defense in anticipation of litigation or in preparation for trial constitutes a "consultant" or other "agent" under Rule 26(b)(3). Indeed, Merriam-Webster's Online Dictionary defines the term "consultant" as "one who gives professional advice or services: expert." www.merriam-webster.com/dictionary/consultant. Thus, this reference within Rule 26(b)(3) appears to extend the protections of the work-product doctrine to materials created by a non-testifying, consulting expert in anticipation of litigation or in preparation for trial.

The review of Rule 26(b)(3), however, cannot end here. Rather, the Court must consider the rest of Rule 26(b)(3). In this regard, the introductory language of Rule 26(b)(3) states, "Subject to

the provisions of subdivision (b)(4) of this rule, a party may obtain discovery . . . ."  In other words, the Court must first consider Third-Party Defendants' Motion to Compel the Freeman and Associates information under Rule 26(b)(4)(B).  As mentioned previously, under Rule 26(b)(4)(B), Third-Party Plaintiffs oppose the release of this information because Freeman & Partners, who developed the information in question, did so while it was serving as a non-testifying, consulting expert to Third-Party Plaintiffs.  Third-Party Defendants do not contest Third-Party Plaintiffs' characterization of the information in this manner.  Rather, Third-Party Defendants invoke the exception to the protection that Rule 26(b)(4)(B) provides.  Under this exception, otherwise protected information is discoverable "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

Courts considering the applicability of the "exceptional circumstances" exception to the protections of Rule 26(b)(4)(B) have repeatedly held that the existence of either of two situations warrants the imposition of the exception: (1) the object or condition observed by the non-testifying expert is no longer observable by an expert of the party seeking discovery, or (2) although it is possible to replicate expert discovery on a contested issue, the cost of doing so is "judicially prohibitive."  *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 77 (S.D.N.Y. 1997), citing *Hartford Fire Ins. v. Pure Air on the Lake Ltd.*, 154 F.R.D. 202, 207 (N.D. Ind. 1993); David S. Day, *Expert Discovery in the Eighth Circuit*, 122 F.R.D. 35, 39 (1988); *Delcastor, Inc. v. Vail Assoc.*, 108 F.R.D. 405 (D. Colo. 1985); *Sanford Constr. Co. v. Kaiser Aluminum & Chem. Sales, Inc.*, 45 F.R.D. 465, 466 (E.D. Ky. 1968); *MacDonald Sprague Roofing Co. v. USM Weather-Shield Sys. Co.*, 38 Fed. R. Serv. 2d 518 (D. Mass. 1983); *Lilley v. Dow Chem. Co.*, 105 F.R.D. 577, 581 (E.D.N.Y. 1985); *see also Pinal Creek Group v. Newmont Mining Corp.*, 2006 WL 1817000, *6 (D. Ariz. June 30, 2006) (citations omitted); *Long Term Capital Holdings v. U.S.*, 2003 WL

8

21269586, *2 (D. Conn. May 6, 2003); *Estate of Manship v. U.S.*, 240 F.R.D. 229, 238 n.15 (D. La. 2006). In the case at hand, Third-Party Defendants invoke the first consideration.

More specifically, Third-Party Defendants submit that Third-Party Plaintiffs' insurer hired Freeman & Partners, marine surveyors, to investigate the cause of the incident involving Jameson Cooper, which is the subject of the pending lawsuit. According to Third-Party Defendants, Freeman & Partners "were among the first people to examine the subject food lift after the incident. Indeed, crew members of the *M/Y Meduse* claimed that the subject food lift was 'untouched' by anyone between the time of the subject incident and the Freeman & Partners survey." D.E. 334, p. 7. Third-Party Defendants further urge, "It is . . . apparent [from discovery obtained from Third-Party Plaintiffs] that Freeman & Partners manipulated and disassembled components of the subject food lift in a way that may have constituted spoliation of evidence." *Id.* at p. 8.

A review of the record in this case indicates that Freeman & Partners's inspection of the food lift at issue resulted in the removal from the *M/Y Meduse* of the food lift's metal plate, the set screw screwed into the bushing of the removed metal plate, the two cables and their thimbles that were attached to the metal plate, and the other "failed section" of one of these cables. D.E. 361, ¶4. Freeman & Partners removed these items in order to evaluate them. Consequently, although Third-Party Plaintiffs retain all of the parts removed from the *M/Y Meduse*'s food lift and have provided Third-Party Defendants with photographs of Freeman & Partners' inspection process, as well as a copy of Freeman & Partners' Report, Third-Party Defendants can never have the opportunity to examine the food lift in the condition in which it apparently was following the accident and at the time of Freeman & Partners' inspection of it. Because the cause of the incident involving the food lift constitutes a central issue in the instant litigation, this impairment is not insignificant. Indeed, the Court finds it to constitute precisely the type of situation in which other courts have found

"exceptional circumstances."

*Delcastor, supra*, for example, involved an action arising from a mudslide.  The defendant's consulting expert engineer investigated the mudslide the morning after it occurred and produced a report for the defendant's use in anticipation of litigation.  Although the defendant planned to call the expert as a fact witness to testify as to his observations of the mudslide terrain and proximate drainage ditches following the morning of the mudslide, the defendant did not intend to offer any expert opinions from the engineer.  The plaintiff sought to discover the defense expert's report and to depose the expert regarding the contents of that report.  Although the *Delcastor* Court granted the plaintiff's motion to compel on a variety of different bases, with respect to Rule 26(b)(4)(B)'s exceptional circumstances exception, the court noted that, through no fault of the defendant, circumstances precluded the plaintiff's expert from gaining a first-hand observation of the condition. 108 F.R.D. at 409.  Consequently, it was "impracticable for [the plaintiff] to obtain information similar to that contained in the [defense expert's] report," and the plaintiff satisfied the exception to Rule 26(b)(4)(B).

Similarly, in *Sanford Construction Co.*, *supra*, a buyer of sewer pipe sued the seller for breach of warranty after the pipe allegedly collapsed following installation.  When the pipe was excavated in order to replace it, the plaintiff refused to permit representatives of the defendant to be present, although the plaintiff had its own experts there.  After the new pipe was installed, blacktop was placed over the area.  The defendant sought an order requiring the plaintiff to produce for inspection and copying the reports of its experts who observed the excavation, as well as all photographs taken of the site at the time of the excavation.  Although Rule 26(b)(4)(B) was not yet in existence at the time that the court decided *Sanford*, it nonetheless considered the defendant's argument in light of what is effectively the exceptional circumstances standard that was ultimately

10

adopted as a part of Rule 26(b)(4)(B).  In so doing, the court granted the defendant's motion, reasoning, "Because defendant's agents were not present at the excavation of the pipe and backfill and conditions have subsequently changed, the information contained in plaintiff's experts' reports cannot be obtained by the defendant's independent investigation."  45 F.R.D. at 466.

Likewise, in *Colden v. R.J. Schofield Motors*, 14 F.R.D. 521 (N.D. Ohio 1952), another pre-Rule 26(b)(4)(B) case where the Court effectively applied the Rule 26(b)(4)(B) exceptional circumstances standard, the plaintiff's expert disassembled the car involved in the cause of action for the purpose of inspecting and examining it.  Because of the dismantling of the automobile, the defendant's expert was unable to engage in a similar examination of the car at issue.  Thus, the court ordered production of the plaintiff's expert report, finding the case to constitute a "rare situation[] having exceptional features which make the disclosures necessary in the interest of justice and where the party seeking discovery is not otherwise able effectively to secure the information."  14 F.R.D. at 522.

These cases are analogous to the one presently before the Court.  Although Third-Party Plaintiffs have already turned over the Freeman Report and photographs taken during the inspection, certain of the documents in question appear to contain factual information regarding the lift, as well as information about the procedures Freeman & Partners instituted in inspecting the lift.  Because Third-Party Defendants can have no comparable opportunity to inspect the lift in its assembled state following the accident, Third-Party Defendants have met the exceptional circumstances standard, and such information must be produced.

The Court has reviewed the documents at issue and finds that the following documents, all of which contain substantive information regarding the procedures undertaken by Freeman & Associates, must be produced by **June 4, 2008**:

1.      Document 93 (April 2, 2008, e-mail may be redacted; last paragraph on p. 2 may be redacted);

2.      Document 94 (April 2, 2008, e-mail may be redacted; second sentence in September 17, 2007, e-mail may be redacted; in September 14, 2007, e-mail, remainder of sentence after "sketches" and following sentence may be redacted);

3.      Document 95 (April 2, 2008, e-mail may be redacted, although attachments may not).

Documents 91 and 92, and 97 through 99 do not include any substantive information regarding the procedures Freeman & Associates employed in conducting its inspection and examination of the food lift.  Moreover, they are otherwise protected under the work-product doctrine, as they involve opinion (not fact) work product, and the writer of the documents, Christopher Karentz, was working at the time as an agent of Third-Party Plaintiffs when he communicated with Freeman & Associates, which was employed as a non-testifying, consulting expert for Third-Party Plaintiffs.  Nor does the Court find that release of the Freeman Report waived the work-product doctrine with regard to these particular documents.  Although they evidence general communications with Freeman & Associates, these documents do not suggest or opine upon the procedures Freeman & Associates was to employ in conducting its examination of the food lift. As such, they do not relate to the specific subject matter for which the release of the Freeman Report arguably waived any otherwise-existing work-product doctrine protection.  *See Varel v. Banc One Capital Partners, Inc.*, 1997 WL 86457, *3 (N.D. Tex. Feb. 25, 1997).

**Request 28**:

Request for Production Number 28 seeks

> Any and all documents relating to the settlement of the first party suit filed in this case by Jameson Cooper against Third-Party Plaintiffs, including but not limited to all documents relating to any mediation(s) at which Plaintiff and Third-Party Plaintiffs were present, copies of any checks reflecting settlement payments made by Third-Party Plaintiffs to Plaintiff, correspondence between Plaintiff,

> and/or his attorneys, and Third-Party Plaintiffs, and/or their attorneys,
> relating to settlement, all contracts or agreements relating to
> settlement and executed by Plaintiff and any of Third-Party Plaintiffs,
> and any documents reflecting the source of settlement funds to be
> paid to Plaintiff by Third-Party Plaintiffs.

In response to Third-Party Defendants' Request 28 for all documents relating to the settlement reached between Plaintiff Jameson Cooper and Third-Party Plaintiffs, Third-Party Plaintiffs produced a copy of the "confidential" Seafarer's Release of All Claims and the "confidential" check showing payment of the settlement proceeds, subject to the protections of the parties' Confidentiality Agreement.  In all other respects, however, Third-Party Defendants object to Request 28, because, they claim that the request at issue (1)  requests documents that are neither relevant nor calculated to lead to admissible evidence, (2) "is overbroad, vague, and ambiguous," and (3) seeks information protected by the attorney-client privilege, the work-product privilege, and a "settlement communications" privilege, and that the documents sought enjoy the protections of "statute[s] and court rules" because they were "prepared during mediation."  D.E. 310, p. 6.

Considering Third-Party Plaintiffs' relevance objections first, Rule 26(b), Fed. R. Civ. P., sets forth the permissible parameters of discovery.  Under that rule,

> Parties may obtain discovery regarding any matter, not privileged,
> that is relevant to the claim or defense of any party . . . [that] appears
> reasonably calculated to lead to the discovery of admissible evidence
> . . . , [as long as the Court does not find that] (I) the discovery sought
> is unreasonably cumulative or duplicative, or . . . obtainable from
> some other source that is more convenient, less burdensome, or less
> expensive; (ii) the party seeking discovery has had ample opportunity
> by discovery in the action to obtain the information sought; or (iii) the
> burden or expense of the proposed discovery outweighs its likely
> benefit, taking into account the needs of the case, the amount in
> controversy, the parties' resources, the importance of the issues at
> stake in the litigation, and the importance of the proposed discovery
> in resolving the issues. . . ."

R. 26(b), Fed. R. Civ. P.  The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of

discovery is to allow a **broad** search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Adv. Com. Notes, 1946 Amendment, R. 26, Fed. R. Civ. P. (citations omitted) (emphasis added). Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'" *Id.* (citation omitted).

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure. As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies. The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[1] (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)). Of course, the scope of permissible discovery is not unbounded. Requested discovery must be relevant, and it must not impose undue burden, under the tests described in Rule 26(b)(2)(C)..

Thus, for the Court to consider permitting discovery of the settlement documents Third-Party Defendants seek, Third-Party Defendants must demonstrate that the information sought is "relevant," as Rule 26 defines the term. In this regard, Third-Party Defendants first note that Third-Party Plaintiffs have sued Third-Party Defendants for indemnification, subrogation, and contribution, seeking to have Third-Party Defendants pay all or part of the $3.5 million settlement reached earlier in the litigation between Third-Party Plaintiffs and Plaintiff Jameson Cooper. Because of this, Third-

---

[1] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

Party Defendants assert, the reasonableness of the settlement between Cooper and Third-Party Plaintiffs constitutes a matter in issue in this litigation.

The Court agrees.  Indeed, Eleventh Circuit precedent demands such a conclusion.  In *GAB Business Servs., Inc. v. Syndicate 627,* 809 F.2d 755 (11th Cir. 1987), Syndicate 627 ("627") insured a horse for the actual value of the horse, up to a maximum of $250,000.00.  When 627 learned that the horse had been hurt, it contracted with GAB to investigate the injury and protect 627's interest in the horse.  Because some owners may conclude that a horse that can no longer race is worth more dead than alive, one way to protect an insurer's interest in an insured horse involves removing the horse from the racetrack.  GAB did not do this, however.  Instead, GAB asked the trainer at the owner JDA Farms's ("JDA") racetrack to send the horse for an examination.  JDA's trainer failed to send the horse for two appointments.  After the horse finally arrived for a third appointment, the veterinarian concluded that the horse's life was not in danger, but it had a limited prognosis for racing.  Upon learning of this information, rather than arranging for the horse to be kept from the racetrack, GAB allowed JDA's trainer to transport the horse back to his track.  Shortly thereafter, the horse died after ingesting poison.  Based on an autopsy of the horse, one veterinarian concluded that the horse had been intentionally poisoned.  Apparently as a result of this autopsy finding, 627 decided not to honor the insurance policy held by JDA, who then filed suit against 627 and GAB.

GAB settled with JDA for $15,000.00.  Soon afterwards, 627 settled with JDA, agreeing to pay the full $250,000.00 policy limit.  Following this resolution, GAB filed suit against 627, seeking indemnification from 627 for the expenses of its settlement with JDA.  627 counter-claimed against GAB, likewise for 627's settlement expenses with JDA.  During the course of the litigation, GAB sought to question one of 627's attorneys concerning the substance of 627's settlement negotiations

with JDA, as well as the motivation behind them.  809 F.2d at 762.  In discussing any entitlement

GAB might have to the discovery sought, the Eleventh Circuit found that the reasonableness of 627's

$250,000.00 settlement with JDA, in light of 627's actual or potential liability to JDA,[2] constituted

an issue "at the 'very heart'" of the litigation.  809 F.2d at 762 n.11.

  The Court finds no significant differences between *GAB* and the instant matter.  Just as 627

sued GAB for indemnification and contribution for the costs of 627's settlement with the underlying

plaintiff in *GAB*, Third-Party Plaintiffs here seek indemnification and contribution from Third-Party

Defendants for the settlement that Third-Plaintiffs entered into with Cooper.  Thus, as in *GAB*, the

reasonableness of the settlement with the underlying plaintiff constitutes an issue at the crux of

Third-Party Plaintiffs' claim.  Consequently, no doubt can exist that the settlement documents sought

are "relevant" under Rule 26.

  As for Third-Party Plaintiffs' objections based on vagueness, overbreadth, and ambiguity,

the Court notes that other courts have concluded that production requests that seek information

"relating to" subject areas are impermissibly overbroad.  *See e.g.*, *Sonnino v. Universtiy of Kan.*

*Hosp. Auth.*, 2004 WL 764085, *5 (D. Kan. 2004) (holding that requests for production seeking "all

documents that relate to or concern" a particular topic was "either excessively vague or overbroad

in scope"); *Audiotext Comm.'s v. U.S. Telecom,* Inc., 1995 WL 18759 at *1 (D. Kan. 1995) (requests

---

  [2]The Eleventh Circuit noted that before any settlement with an underlying plaintiff is
concluded, the indemnitee must offer the indemnitor protections equal to the choice of approving
the settlement or taking over the defense of the case and agreeing to hold the indemnitee
harmless in any event for damages which may be assessed against him in excess of the amount of
the proposed settlement.  809 F.2d at 760.  Where the indemnitee satisfies this requirement, he
must prove potential liability.  *Id.*  Where, however, the indemnitee fails to provide these
protections, he must make a showing of actual liability.  *Id.*  Either way, however, the
reasonableness of the settlement remains a central issue.

worded broadly function like a "giant broom, sweeping everything in their path, useful or not."). In this case, however, Third-Party Defendants have provided examples of the types of documents they seek through Request 28. Accordingly, despite the initially sweeping language contained within Request 28 and Third-Party Defendants' expressly stated intention not to limit the request to the categories of documents articulated following the phrase "including but not limited to," constricting the request in precisely this way to require Third-Party Plaintiffs to produce only those kinds of documents specifically described within the request sufficiently narrows and defines the request, allowing it to survive Third-Party Plaintiffs' challenges based on overbreadth, vagueness, and ambiguity.

Finally, the Court turns to Third-Party Plaintiffs' privilege claims. The Court, however, need not consider the substance of each of these invocations of privilege because, based on *GAB*, Third-Party Plaintiffs' chosen causes of action necessarily effectively waive the specified privileges that may otherwise exist. As discussed above, the facts of *GAB* correspond directly to the facts of the instant case. While Third-Party Plaintiffs seek indemnification from Third-Party Defendants for Third-Party Plaintiffs' settlement with Cooper in the case at hand, in *GAB*, 627 sought indemnification from GAB for 627's settlement with JDA. Likewise, in both cases, the indemnitee seeks or sought to avoid discovery of the substance of settlement negotiations and the motivation behind them.

In analyzing 627's claims of privilege in this regard, the Eleventh Circuit noted that 627 bore the burden of demonstrating the reasonableness of the settlement in order to prevail on its counterclaim. 809 F.2d at 761-62. To do so, 627 necessarily had to introduce evidence as to the strength of JDA's case. *Id.* at 762. Because the Eleventh Circuit concluded that 627 could not "hide

17

behind the shield of privilege to prevent GAB from effectively challenging such evidence," the Eleventh Circuit held that 627 waived its privilege with regard to the substance and motivation behind the settlement negotiations when 627 "inject[ed] into this litigation an issue that require[d] testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct." *Id.* at 762 (citing *Laughner v. U.S.*, 373 F.2d 326, 327 (5th Cir. 1967); *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446-47 (S.D. Fla.)). Indeed, the Eleventh Circuit concluded that the district court's failure to allow discovery into 627's motivation for settling with JDA required reversal. *Id.*

The Court can discern no meaningful distinction between *GAB* and the instant matter warranting a departure from the teachings of *GAB*. Consequently, the Court finds that because Third-Party Plaintiffs must necessarily demonstrate the reasonableness of their settlement with Cooper, they have waived claims of privilege with respect to the evidence necessary to evaluate that issue, and Third-Party Plaintiffs' documents concerning the substance of and motivation behind the settlement with Cooper must be released to Third-Party Defendants. Third-Party Plaintiffs must produce these responsive documents by no later than **June 4, 2008.**

**Request 30**:

Request for Production 30 seeks any and all agreements between Fraser Yachts and any of the Third-Party Plaintiffs. Third-Party Plaintiffs objected to the request, stating that it was overly broad, vague, ambiguous, and that it sought information that is not relevant to the dispute between the parties. They also asserted that the request sought discovery of confidential and privileged information that constitutes the trade secrets of Third-Party Plaintiffs and Fraser Yachts. Notwithstanding their objections, Third-Party Plaintiffs produced a redacted copy of the Yacht Management Agreement between Fraser Yachts Services, Inc., and Meridian Yachts, Ltd. Third-

Party Defendants contend that the objection to the request on the grounds that it seeks privileged trade secrets is without merit, in light of the fact that the parties executed a Confidentiality Stipulation and Protective Order, which was approved by the Court. They also emphasize that Third-Party Defendants have already produced documents containing trade secrets in reliance on the agreement to keep the documents confidential.

During the hearing, Third-Party Plaintiffs further argued that the only agreement that is relevant to this case is the Management Agreement that has previously been produced. As written, Third-Party Plaintiffs assert that the request would encompass any agreement, including trivial items such as agreements to purchase equipment. In response to this argument, Third-Party Defendants clarified that they did not seek such insignificant agreements. Instead, they seek documents providing enlightenment regarding the relationship between Fraser and the *Meduse* and the Third-Party Plaintiffs. After hearing argument from counsel, the Court agreed that the request, as originally worded, was overly broad. The Court narrowed the request to require Third-Party Plaintiffs to produce documents regarding Fraser and Third-Party Plaintiffs that define or describe their business relationships, duties, and obligations with respect to the *Meduse*. The Court directed Third-Party Plaintiffs to produce the responsive documents within five days of the hearing (*i.e.*, May 19, 2008). If appropriate, Third-Party Plaintiffs may designate the responsive documents as "confidential" in accordance with the parties' Confidentiality Stipulation and Protective Order. Further, during the subsequent May 19, 2008, hearing, the Court granted Third-Party Plaintiffs' request to redact any references to compensation contained within the responsive documents.

**<u>Request 31</u>**:

Request for Production 31 seeks any and all budgets for the *Meduse*. Third-Party Plaintiffs

objected on the grounds that the request is overly broad, vague, and ambiguous because it is not limited to the food lift and slack cable device at issue and seeks information related to issues not in dispute. Additionally, Third-Party Plaintiffs contend that the request is unduly burdensome since it requires them to search for "any and all" budgets of the *Meduse*. Notwithstanding their objections, Third-Party Plaintiffs provided copies of portions of budgets related to the food lift on board the *Meduse*. In response, Third-Party Defendants assert that they seek all budgets so that they may obtain information relating to maintenance and repair of the *Meduse* from its launch in 1997 through 2005.

During the hearing, however, Third-Party Defendants stated their intention to further limit the request to encompass only budgets pertaining to the lifts on board the *Meduse* (*i.e.*, the food lift and personnel lift). After the limitation, counsel for Third-Party Plaintiffs informed the Court that he would go back to his client and determine whether additional responsive documents exist within Third-Party Plaintiffs' custody, control, or possession. Counsel stated that he believed the budgeted amount for the lifts was $500.00, but to be required to go back through records from 1997-2005 would entail reviewing years of electronically archived documents. The Court inquired, and Third-Party Defendants agreed to allow Third-Party Plaintiffs to stipulate that the budget for each of the years 1997-2005 for the lifts was $500.00 or less. Hence, the Court directed counsel for Third-Party Plaintiffs to confer with his clients and stipulate, if appropriate, that the budget for the lifts on the *Meduse* for the years 1997-2005 was $500.00 or less. The Court directed Third-Party Plaintiffs to make such a stipulation if the circumstances warranted within five days of the date of the hearing (*i.e.*, May 19, 2008). Alternatively, Third-Party Plaintiffs have the option to produce documents responsive for maintenance budgets for the lifts for the years requested.

20

**Requests 32 and 36**:

Although Third-Party Defendants originally sought to compel documents responsive to Requests for Production 32 and 36, these requests were withdrawn by Third-Party Defendants during the May 12, 2008, hearing. Hence, the Motion to Compel with respect to Requests 32 and 36 was denied as moot.

### *CONCLUSION*

Accordingly, Third-Party Defendants' Motion to Compel Third-Party Plaintiffs to Produce a Privilege Log and Documents in Response to Third-Party Defendants' First Requests for Production. [D.E. 310] is hereby **GRANTED IN PART AND DENIED IN PART** as set forth herein.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 28th day of May, 2008.

ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:    Honorable William P. Dimitrouleas
       Counsel of Record